# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-01047-SCT

*KPMG, LLP*

*v.*

*SINGING RIVER HEALTH SYSTEM a/k/a*
*SINGING RIVER HOSPITAL SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/12/2017 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | KRISTI ROGERS BROWN |
| | EDWARD C. TAYLOR |
| | PATRICIA ANNE GORHAM |
| | AMELIA TOY RUDOLPH |
| | R. DAVID KAUFMAN |
| | TAYLOR BRANTLEY McNEEL |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | R. DAVID KAUFMAN |
| | AMELIA TOY RUDOLPH |
| | PATRICIA ANNE GORHAM |
| | TAYLOR BRANTLEY McNEEL |
| ATTORNEYS FOR APPELLEE: | EDWARD C. TAYLOR |
| | KRISTI ROGERS BROWN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 10/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Singing River Health System a/k/a Singing River Hospital System ("Singing River")

sued KPMG, LLP, in Hinds County Circuit Court.  KPMG sought to compel arbitration of

Singing River's claims. The circuit court declined to order Singing River to the arbitral forum, and KPMG appealed. The Court affirms the trial court's order denying KPMG's motion to compel arbitration and remands the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Singing River is a county-owned community hospital and a political subdivision of Jackson County, Mississippi, organized in accordance with the community-hospital statutes and governed by a board of trustees. Miss. Code Ann. §§ 41-13-10 to -107 (Rev. 2013). Singing River is the second largest employer in Jackson County, employing approximately 2,400 employees. KPMG is one of the largest audit, tax, and advisory firms in the United States. KPMG (and its predecessor firm, Peat Marwick) audited Singing River's financial statements from 1978 to 2012.

¶3. In fiscal years 2008 through 2012, Singing River's former Chief Financial Officer Michael Crews signed engagement letters issued by KPMG regarding proposed auditing services. The 2008 and 2009 letters had various attachments that contained dispute-resolution provisions. In 2010, 2011, and 2012, KPMG issued a two-page letter, which was to serve as an "amendment" to the March 31, 2009, letter. The only attachment to these two-page letters was a single appendix, labeled "Services and Billing Schedule." For those three years, no separate attachment regarding dispute resolution had been included.

**Fiscal Year 2008**

¶4. On May 7, 2008, the Singing River Audit and Compliance Committee ("Committee")

met and discussed KPMG's 2008 proposal.[1]  A relevant portion of the Committee's minutes

state that

> Mr. Crews reviewed the Engagement Letter for the Fiscal Year 2008 audit by
> KPMG.  Mr. Crews discussed the breakdown of proposed audit fees as stated
> on the Billing Schedule of the Engagement Letter in detail.  On a motion made
> by Mr. Strickland and a second by Mr. Heidelberg, the Committee voted
> unanimously to approve the Engagement Letter, including all proposed audit
> fees.
>
> . . .
>
> The members of the Committee agreed that the Management Letter, Report on
> Internal Control, and Engagement Letter should be transmitted to the full
> Singing River Hospital System Board of Trustees with a recommendation for
> approval.

¶5.     The Committee's minutes are silent as to the terms and conditions of KPMG's 2008

proposal.  Additionally, the letters were neither attached to, nor included in, the minutes of

---

[1]A board of trustees of a community hospital is authorized by statute to

> delegate to . . . committees reasonable authority to carry out and enforce the
> powers and duties of the board of trustees during the interim periods between
> regular meetings of the board of trustees; provided, however, that any such
> action taken by an officer or committee shall be subject to review by the
> board, and actions may be withdrawn or nullified at the next subsequent
> meeting of the board of trustees if the action is in excess of delegated
> authority.

Miss. Code Ann. 41-13-35(2) (Rev. 2013).  However, the statutory authority to delegate
does not absolve a board of trustees of its own statutory (and common law) duty to "keep
minutes of its official business[.]" Miss. Code Ann. § 41-13-35(3) (Rev. 2013) (emphasis
added).  *See* **Dixon v. Green Cty.**, 76 Miss. 794, 25 So. 665 (1899) ("[T]he board of
supervisors cannot delegate powers [e]ntrusted to that board, to be by that board alone
exercised, to any superintending board.").  Justice Coleman recently wrote for the
unanimous Court that "[a]ll acts of the community hospital board of trustees must be "stated
in express terms and recorded on the official minutes and the action of the board [of
trustees]." **Wellness, Inc. v. Pearl River Cty. Hosp.**, 178 So. 3d 1287, 1291 (Miss. 2015)
(internal alterations omitted).

3

the Committee. The very next day, on May 8, 2008, Crews signed the letter "on behalf of Singing River Hospital System," twenty days *before* the next Singing River Board of Trustees ("Board") meeting.

¶6.     The Board met on May 28, 2008.  The Board minutes concerning the 2008 letter read as follows:

> Mr. Crews stated that the Audit & Compliance Committee held a meeting on May 7, 2008, during which they approved the Report on Internal Control, Management Letter, and fiscal year 2008 Engagement Letter, copies of which were included in the agendas in advance of the meeting.  After discussion and on a motion by Mr. Cronier and a second by Mr. Strickland, the Board voted unanimously to approve the minutes of the Audit & Compliance Committee meeting held May 7, 2008, Report on Internal Control, Management Letter, and fiscal year 2008 Engagement Letter with KPMG, as presented and included in the minutes by reference.

The Board failed to recite a single term and/or condition of the 2008 proposal in its minutes. For example, the minutes are silent as to the date of the letter; the term or length of the service; the scope of work or service to be performed; the fees, expenses, or charges to be paid by the hospital; and other contractual provisions, including a now disputed resolution clause.[2]  Although the minutes reflect that copies of the vaguely described documents were included in the Board's agendas in advance of the meeting, the minutes are unclear what meeting the minutes are referencing, *i.e.*, the Board's meeting or the Committee's meeting on May 7.  Finally, although the minutes state that the 2008 letter had been presented and incorporated by reference in the minutes, the letter was not attached to the Board's minutes.

---

[2] This illustrative list of contractual terms and conditions based on the facts of this case is not meant to serve as an exclusive list of what should be included in a public board's minute entries.

4

**Fiscal Year 2009**

¶7. On May 7, 2009, only two of the four voting members of the Committee met and discussed KPMG's 2009 letter. The Committee's minutes reflect that

> Mr. Crews presented the Engagement Letter from KPMG for the FY 2009 audits, including the Financial Statement Audit, A-133 Audit, and the Benefit Plan Audit. He reviewed the proposed fee schedule, which is identical to the proposed fee schedule on the FY 2008 audit.[3]
>
> Mr. Crews also reviewed the Engagement Letter from KPMG for assistance in the preparation of the FY 2009 Medicare Cost Report. He reviewed the proposed fee for the Cost Report assistance, which is also identical to the proposed fees included in the Engagement Letter from the prior year.
>
> Mr. Crews asked the Committee to approve the Engagement Letters as presented. On a motion made by Mr. Heidelberg and a second by Mr. Tolleson, the Committee voted unanimously to approve the Engagement Letters. The Engagement Letters will also be taken to the SRHS Board of Trustees for final approval.

¶8. The Committee noted that KPMG was to perform a financial statement audit, an A-133 audit, and a benefit plan audit, but the minutes again failed to include any terms or conditions. Further, the letter was not attached to the Committee's minutes. Crews signed the letter "on behalf of Singing River Health System" on May 14, 2009.

¶9. Because only two of the four voting members were present at the May 7, 2009, meeting, a telephonic conference was held on June 23, 2009—one day before the Board was scheduled to meet—for the express purpose of approving the actions taken at the May 7 meeting, including approval of KPMG's proposal. The terms and conditions of the 2009

---

[3] The 2008 billing schedule and the 2009 billing schedule are not identical.

5

letter were, once again, omitted from the Committee's minutes. Likewise, the letter was not attached to the Committee's June 23, 2009, telephonic conference minutes.

¶10.    The Board met on June 24, 2009.   The minutes of the Board reflect that the Committee's minutes for May and June were unanimously approved, including the approval of KPMG's 2009 proposal:

> Mr. Anderson explained that previous to this meeting, a Board member suggested that since there were only two of four Committee members present for the May 7, 2009, meeting that the minutes be approved while there was a quorum present.   For this purpose, a phone poll was conducted of the Committee members on June 23, 2009, and minutes were typed to reflect the approval with a full quorum present.  Copies of the minutes of the June 23, 2009, phone poll were distributed at the meeting.  Mr. Crews explained the purpose of the May 7, 2009, Audit & Compliance Committee meeting.  After discussion and on motion by Mr. Strickland and a second by Ms. Tanner, the Board unanimously approved the minutes of the May 7, 2009, Audit & Compliance Committee meeting, and the minutes of the phone poll conducted on June 23, 2009.  Then on a motion by Mr. Tolleson and a second by Mr. Strickland, the Board unanimously approved the report on Internal Control, Management Letter, fiscal year 2009 Engagement Letter, and Cost Report Assistance Engagement Letter, all of which were approved by the Audit & Compliance Committee at their meeting held May 7, 2009, as presented and included in the minutes by reference.

Again, the Board failed to include a single term and/or condition of the 2009 letter in its minutes.[4] The letter was not attached to the Board's minutes.[5]

**Fiscal Years 2010 - 2012**

¶11.    The record reflects that the Committee met in 2010, 2011, and 2012 and approved KPMG's proposal letters, without reference to any specific terms or conditions and without

---

[4] The minute deficiencies described in paragraph 6 also exist in the Board's 2009 minutes.

[5] The Board's agenda had attached materials related to items listed on the agenda.

6

attaching the letters to the minutes. But unlike the previous two years, the Board failed to take any action concerning KPMG's letters for fiscal years 2010, 2011, or 2012. The Board's minutes reflect that the Board failed to discuss, review, or approve KPMG's proposals for those years. The Board's minutes are devoid of any evidence that Singing River contracted with KPMG to perform services, much less any terms or conditions of such a contract. The letters were neither referenced in, nor attached to, the Board's minutes from 2010 to 2012.

¶12. In fiscal year 2013, Singing River hired Horne, LLP, to conduct Singing River's annual audit. Horne informed Singing River that KPMG's prior audits had resulted in an eighty-eight million dollar ($88,000,000.00) overstatement of Singing River's accounts receivable.

¶13. On October 29, 2015, Singing River filed a complaint in Hinds County Circuit Court against KPMG, alleging separate counts of breach of contract and negligence and/or professional malpractice based on the audits KPMG performed for Singing River in fiscal years 2008 through 2012. Singing River alleged that KPMG failed to comply with the professional auditing and accounting standards expressed in GAAS (Generally Accepted Auditing Standards), GAGAS (Generally Accepted Government Auditing Standards), and GAAP (Generally Accepted Accounting Principles), which KPMG had agreed to follow. Singing River specifically alleged that KPMG's audits were replete with computational errors and incorrect assumptions, and that KPMG had not performed basic tests to substantiate its opinions. Singing River separately alleged that KPMG was negligent and committed professional malpractice by failing to use the skill, prudence, and diligence other

7

reasonable and prudent auditors would use in similar circumstances, as expressed in the standards articulated in GAAS, GAGAS, and GAAP.

¶14. Singing River alleged, *inter alia,* that, as a direct and proximate result of KPMG's audits, Singing River was unaware that its employee-pension plan was underfunded by approximately one-hundred-fifty million dollars ($150,000,000.00). Further, Singing River alleged that it was unaware that it was not in compliance with certain bond covenants due to KPMG's negligence.

¶15. In response, KPMG filed a motion to compel arbitration and to stay the proceedings pending arbitration. KPMG argued that Singing River's claims arose out of the engagement letters, and that those engagement letters contained a valid and enforceable arbitration clause. KPMG requested the trial court to stay the proceedings and to refer Singing River's dispute to binding arbitration. Singing River responded to KPMG's motion to compel arbitration, requesting that the court deny KPMG's motion. A hearing on KPMG's motion to compel arbitration was held on June 13, 2016. Then, on July 12, 2017, the trial court issued an order denying KPMG's motion to compel Singing River's claims to arbitration. KPMG appealed.

## ISSUES

¶16. KPMG argues that the trial court erred in denying its motion to compel arbitration, framing the issues on appeal as follows:

> I.   By denying KPMG's motion to compel arbitration, the Circuit Court declined to give effect to the delegation provision in the contracts that states, "Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or

8

unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction." Was this error?

II. Did the Circuit Court err in finding that "the terms of the contract herein were not sufficiently spread across the minutes?"

III. The Circuit Court found that "the terms of the contract herein were not sufficiently spread across the minutes and, thus, the arbitration agreement is not enforceable." Does the Circuit Court's order apply Mississippi's minutes rule in a way that "singles out arbitration agreements for disfavored treatment" and therefore in a manner preempted by the Federal Arbitration Act?

IV. The Circuit Court failed to give collateral estoppel effect to the decision of the United States District Court for the Southern District of Mississippi in *Jones v. Singing River Health Services Foundation*, No. 1:14-cv-00447-LG-RHW, 2016 WL 1254385 (S.D. Miss. Mar. 29, 2016), which found that Singing River and KPMG "entered into a valid arbitration agreement." Was this error?

V. Under Mississippi's doctrine of direct-benefit estoppel, a plaintiff is equitably estopped from suing a defendant for alleged breach of contract and simultaneously denying that it is bound by provisions in that same contract. The Circuit Court failed to address KPMG's argument that Singing River is invoking the audit engagement letters to sue KPMG for their alleged breach and simultaneously contending that it is not bound by the arbitration provisions contained in those same engagement letters. Was this error?

## STANDARD OF REVIEW

¶17. The Court applies a *de novo* standard of review in reviewing the grant or denial of a motion to compel arbitration. *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1034 (Miss. 2010) (citing *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)).

## DISCUSSION

### I.     Minutes Rule

9

¶18. In denying KPMG's motion to compel and in declining to order Singing River's claims to the arbitral forum, the trial court ruled that "the terms of the contract herein were not sufficiently spread across the minutes, and, thus, the arbitration agreement is not enforceable." KPMG contests the trial court's finding and argues that "the engagement letters were sufficiently spread upon the minutes for 2008 through 2012."

¶19. For well over a century, this Court has consistently held that public boards speak only through their minutes and that their acts are evidenced solely by entries on their minutes. *See, e.g.*, ***Wellness, Inc. v. Pearl River Cty. Hosp.***, 178 So. 3d 1287, 1290 (Miss. 2015) (board of trustees of community hospital must keep minutes of its official business and speaks and acts only through its minutes); ***Ladner v. Harrison Cty. Bd. of Supervisors***, 793 So. 2d 637, 639 (Miss. 2001) (board of supervisors can only act through its minutes); ***Nichols v. Patterson***, 678 So. 2d 673, 677 (Miss. 1996) (boards of supervisors' contracts, and every other substantial action taken by them, must be evidenced by entries on their minutes and can be evidenced in no other way); ***Bruner v. Univ. of S. Miss.***, 501 So. 2d 1113, 1116 (Miss. 1987) (minutes of the board of supervisors must be the repository and the evidence of their official acts); ***Thompson v. Jones Cty. Cmty. Hosp.***, 352 So. 2d 795, 796 (Miss. 1977) (sustaining motion to dismiss because contract was not entered on minutes and enough of the substance of the contact was not contained in the minutes for a determination of the liabilities and obligations of the contracting parties without evidence dehors the minutes); ***Miss. State Highway Comm'n v. Sanders***, 269 So. 2d 350 (Miss. 1972) (state commission bound only by affirmative action evidenced by an entry on its minutes and one member's individual acts

10

not binding on the commission); ***Cheatham v. Smith***, 229 Miss. 803, 92 So. 2d 203 (1957) (boards of trustees of school districts can act only through their minutes); ***Bd. of Supervisors of Adams Cty. v. Giles***, 219 Miss. 245, 68 So. 2d 483 (1953) (when the board of supervisors' minutes evidenced what the board did and "showed the substantial provisions of the contract," the minutes rule was satisfied); ***Thornhill v. Ford***, 213 Miss. 49, 56 So. 2d 23 (1952) (a board's contracts are evidenced by the entries on their minutes); ***Martin v. Newell***, 198 Miss. 809, 23 So. 2d 796 (1945) (validity of the contract required an entry of an order on the minutes of the board); ***Smith Cty. v. Mangum***, 127 Miss. 192, 89 So. 913 (1921) (board of supervisors of a county can only enter into an express contract by an order spread upon its minutes); ***Marion Cty. v. Foxworth***, 83 Miss. 677, 36 So. 36 (1904) (contract entered by board of supervisors evidenced on minutes when stated with certainty and full detail and stated with clearness the price to be charged for each specific portion); ***Bridges & Hill v. Bd. of Supervisors of Clay Cty.***, 58 Miss. 817 (1881) (boards of supervisors bind counties only when acting within their range of authority and when their contracts are evidenced by the entries on their minutes).

¶20. Like any other public board, a board of trustees of a community hospital is required to "keep minutes of its official business[.]" Miss. Code Ann. § 41-13-35(3) (Rev. 2013).

> A community hospital board of trustees, as does any public board in the State of Mississippi, speaks and acts only through its minutes . . . . And where a public board engages in business with another entity, no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action of the board . . . .
>
> However, the entire contract need not be placed on the minutes. Instead, it may be enforced where enough of the terms and conditions of the contract are

11

contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence.

*Wellness, Inc.*, 178 So. 3d at 1290-91 (alterations omitted) (citations and quotations omitted). "However, it is the responsibility of the entity contracting with the Board, not the responsibility of the Board itself, to ensure that the contract is legal and properly recorded on the minutes of the board." *Id.* at 1291 (citations omitted) (internal quotations omitted).[6]

¶21.　In *Wellness, Inc.*, the Chief Executive Officer of a community hospital signed a contract on behalf of the hospital for Wellness to provide furnishings, fixtures, equipment, and systems for the community hospital's renovation. *Id.* at 1289. The minutes of the hospital's Board of Trustees mentioned Wellness and explained how the renovations were being financed, but the specific contract with Wellness and its terms were not revealed. *Id.* Later, the community hospital sued Wellness alleging, *inter alia*, fraud, conspiracy, and breach of contract. *Id.* The contract with Wellness contained an arbitration clause, so Wellness filed a Motion to Compel Mediation and (if Necessary) Arbitration. *Id.* In response, the community hospital denied any agreement to mediate or arbitrate. *Id.* The trial court denied Wellness's motion to compel, and Wellness appealed. *Id.*

¶22.　In order to determine whether the Wellness agreement was "sufficiently spread upon the Board's minutes such that the Hospital can be said to have agreed to mediate or arbitrate any disputes with Wellness[,]" *Wellness, Inc.*, 178 So. 3d at 1290, this Court first examined *Thompson v. Jones County Community Hospital*, 352 So. 2d 795 (Miss. 1977). In *Thompson*, a former community-hospital employee sued the hospital for breach of contract

---

[6] *See* discussion, *infra*, at Section II.

12

based on an unpaid salary. This Court affirmed the trial court's grant of a motion to dismiss because

> the employment contract itself never had been entered upon the minutes of the board of trustees, nor had 'enough of the substance of the contract' been contained therein. The minutes had stated only that a four-year contract as executive director of the hospital had been granted to the plaintiff and that its acceptance had been unanimous after 'appropriate discussions.' The Court stated that because the minutes contained 'no reference to the salary to be paid plaintiff for his services, . . . the Court may not determine the amount of the salary.'

*Wellness, Inc.*, 178 So. 3d at 1291 (quoting *Thompson*, 352 So. 2d at 795-98) (internal citations omitted). The Court in *Thompson* then held that, while the entire contract itself need not be placed on the minutes, "enough of the terms and conditions of the contract" must be "contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." *Thompson*, 352 So. 2d at 797. Otherwise, the entire contract will be unenforceable. *Id.*

¶23. Relying on *Thompson*, this Court in *Wellness, Inc.* then examined the community hospital's board of trustees' minutes in reference to the renovation agreement with Wellness. The portions of the hospital board's minutes concerning the Wellness agreement were summarized as follows:

> In September 2011, the Board discussed the reduction in a financing rate, and that Wellness would renovate twelve rooms 'for a cost of less than $5,000.00 per room.' The Board also discussed a time frame for the renovation and the cost per room at a second meeting in September 2011, and the Board carried a motion to continue with the renovation of four rooms at a time. On May 31, 2012, Trustee Jones 'tendered a motion to accept Wellness Environment's representation that it is a SINGLE/SOLE SOURCE provider for the materials and things' in the Kingsbridge Lease and Contract that had been discussed at a previous Board meeting. The motion was seconded and carried

13

unanimously. A second motion was tendered 'to authorize the Chair of the Board of Trustees to approve for payment the Wellness Environment invoice in the sum of $146,357.00 and to forward the approved invoice to Kingsbridge for payment.' The second motion, too, was seconded and carried unanimously. The above-described motions constitute the sole mentions of any contract between the Board of Trustees for Pearl River Community Hospital and Wellness.

*Wellness, Inc.*, 178 So. 3d at 1291-92.

¶24. Based on the aforementioned minutes, this Court unanimously held that it would "not draw an enforceable arbitration clause from such general, imprecise language." *Id.* at 1292. This Court found that "[t]he minutes from the Board of Trustees' meetings do not set forth sufficient terms to establish the liabilities and obligations of the parties, and thus the court cannot enforce the contract, much less the mediation or arbitration clauses therein." *Id.* at 1291. The hospital's contract with Wellness was only "referenced in broad strokes" in the Board's minutes, with "little detail as to its terms. . . ." *Id.* at 1292. The Court then held that Wellness had not carried its burden of establishing the existence of a contract with the hospital, so the trial court did not err in denying the hospital's motion to compel. *Id.*[7]

¶25. In the instant case, the Board's minutes are exceedingly sparse regarding KPMG's proposals. The Board briefly mentioned KPMG's letters in 2008 and 2009 only. In the years 2010, 2011, and 2012, the Board's minutes do not reference KPMG's proposals.

---

[7] In another recent decision, the Court of Appeals unanimously followed *Wellness, Inc.* in reiterating the century-old rule that public boards speak only through their minutes and that their actions are evidenced solely by entries on the minutes. *Dhealthcare Consultants, Inc. v. Jefferson Cty. Hosp.*, 232 So. 3d 192, 193 (Miss. Ct. App. 2017), *cert. denied*, 229 So. 3d 714 (Miss. 2017).

14

¶26. In 2008, the Board's minutes reflect only that the Board unanimously approved the minutes of the Committee meeting held May 7, 2008, and the fiscal year 2008 engagement letter with KPMG. But the minutes of the Board failed to state a single term or condition of KPMG's proposal letter, including what KPMG was engaged to do and how much KPMG was to be paid. The Board's minutes would be equally uninformative had they been recorded in ancient hieroglyphics. The liabilities and obligations of both parties under KPMG's fiscal year 2008 letter cannot be determined by the Board's minutes.

¶27. The May 7, 2008, Committee minutes that were incorporated by reference into the Board's minutes state that "Mr. Crews reviewed the Engagement Letter for the Fiscal Year 2008 audit by KPMG. Mr. Crews discussed the breakdown of proposed audit fees as stated on the Billing Schedule of the Engagement Letter in detail . . . . [T]he Committee voted unanimously to approve the Engagement Letter, including all proposed audit fees." The Committee's minutes demonstrate, at most, that KPMG was engaged to perform an audit and was to be paid an unknown fee. But the substance of the letter, including the details, terms, and conditions, were not stated with any clarity or specificity. The obligations and liabilities of KPMG and Singing River cannot be determined either by the Board's or by the Committee's minutes. Accordingly, KPMG's 2008 letter cannot be enforced, nor can the separately attached dispute-resolution provision. *Wellness, Inc.*, 178 So. 3d at 1291.

¶28. Similarly, in 2009, the Board's minutes concerning the fiscal year 2009 proposal state only that the Board unanimously approved the fiscal year 2009 Engagement Letter and Cost Report Assistance Engagement Letter, which were both approved by the Committee at their

meeting on May 7, 2009. As in 2008, the Board omitted all of the terms and conditions of the proposal. The minutes do not reflect that either letter was from KPMG, nor do the minutes reveal any details, liabilities, or obligations of the proposal. While the fiscal year 2009 letter was part of the Board's agenda, "boards of supervisors and other public boards speak *only* through their minutes and their actions are evidenced *solely* by entries on the minutes." **Thompson**, 352 So. 2d at 796 (citations omitted) (emphasis added). Further, in reviewing the May 7, 2009, Committee minutes that were incorporated into the Board's minutes by reference, the liabilities and obligations under the 2009 proposal cannot be determined. The Committee's minutes state that

> Mr. Crews presented the Engagement Letter from KPMG for the FY 2009 audits, including the Financial Statement Audit, A-133 Audit, and the Benefit Plan Audit. He reviewed the proposed fee schedule, which is identical to the proposed fee schedule on the FY 2008 audit. . . . Mr. Crews also reviewed the Engagement Letter from KPMG for assistance in the preparation of the FY 2009 Medicare Cost Report. He reviewed the proposed fee for the Cost Report assistance, which is also identical to the proposed fees included in the Engagement Letter from the prior year. . . . [T]he Committee voted unanimously to approve the Engagement Letters."

¶29. The Committee's minutes failed to identify a single term or condition of KPMG's 2009 proposal. The substance of the letter and its attachments were not stated with any detail, clarity, or specificity. The obligations and liabilities of both parties under the 2009 letter cannot be determined from either the Board's minutes or the Committee's minutes. Thus, the Court cannot enforce the 2009 letter, nor can it enforce the attachment containing the dispute-resolution provision. **Wellness, Inc.**, 178 So. 3d at 1291.

16

¶30. In fiscal years 2010, 2011, and 2012, the minutes are completely devoid of any reference to KPMG's letters. The Board's minutes make no mention of any terms or conditions of any such agreement for audit services with KPMG from 2010 to 2012. Simply no minute evidence indicates that Singing River even engaged KPMG to perform audit services in those years; thus, determining the liabilities and obligations of both KPMG and Singing River under the 2010 through 2012 proposal letters is impossible, because the Board's minutes reveal no such discussion, review, or approval.

¶31. Even if the Committee's minutes reflect approval of KPMG's 2010, 2011, and 2012 proposals, the *Committee's* minutes are not admissible evidence of a contract for those years, because the *Board's* minutes do not reflect any action taken concerning the 2010 through 2012 letters. Although the Board has statutory authority to delegate to a Committee "reasonable authority to carry out and enforce the powers and duties of the board of trustees,"[8] the Board "cannot delegate powers [e]ntrusted to that board, to be by that board alone exercised, to any superintending board." *Dixon*, 25 So. at 666 (citation omitted). The board of trustees of a community hospital—not a committee—is statutorily required to "keep minutes of its official business,"[9] and "speaks and acts only through its minutes." *Wellness, Inc.*, 178 So. 3d at 1290 (citation omitted). "[W]here a public board engages in business with another entity, 'no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action of the *board*.'" *Id.* at 1291

_____

[8] Miss. Code Ann. § 41-13-35(2).

[9] Miss. Code Ann. § 41-13-35(3).

(alteration omitted) (emphasis added) (citation omitted). Because the Board failed to include any reference to KPMG's 2010, 2011, and 2012 proposals in its minutes, the obligations and liabilities of both parties cannot be determined, and, therefore, the Court cannot enforce KPMG's 2010, 2011, and 2012 proposal letters. *Wellness, Inc.*, 178 So. 3d at 1291.

¶32. Singing River's counsel does not dispute whether letters were signed at KPMG's urging to conduct audit services; therefore, KPMG argues that the minutes rule should not bar enforcement of the letters, including the attachment containing the dispute-resolution provision. KPMG's argument is unpersuasive, for Singing River cannot stipulate that which is prohibited by law. The underlying rationale for the minutes rule provides transparency for the benefit of the public. The purpose of the minutes requirement was previously described by this Court as follows:

> (1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and
>
> (2) that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, *and to which the public may have access to see what was actually done.*

*Wellness, Inc.*, 178 So. 3d at 1293 (emphasis added) (quoting *Lee Cty. v. James*, 178 Miss. 554, 174 So. 76, 77 (1937)). Singing River's stipulation that an agreement was entered with KPMG for audit services does not eradicate the legal requirement that "enough of the terms and conditions of the contract" be included in the minutes for a determination of the

18

obligations and liabilities of both parties. *Thompson*, 352 So. 2d at 797. Because the minutes failed to include any terms or conditions of KPMG's letters from 2008 to 2012, the letters and their attachments are unenforceable.

¶33.    KPMG additionally argues that, *if* the trial court's order finding that the "arbitration agreement" was not enforceable singled out the dispute-resolution provision specifically for application of the minutes rule, such an application would be preempted by the Federal Arbitration Act ("FAA").[10] KPMG is correct that the FAA prohibits courts from invalidating agreements to arbitrate under state laws applicable *only* to arbitration provisions. *Taylor*, 826 So. 2d at 713-14 (emphasis in original).  The minutes rule, however, does not subject the attachments containing the dispute-resolution provisions to special scrutiny.  The trial court's order is quite clear that "the terms of the *contract* herein were not sufficiently spread across the minutes and, thus, the arbitration agreement is unenforceable." (Emphasis added.)  The order clearly applies to KPMG's letters in their entirety. *See Wellness, Inc.*, 178 So. 3d at 1291 ("[T]he minutes from the Board of Trustees' meetings do not set forth sufficient terms to establish the liabilities and obligations of the parties, and thus the court cannot enforce the contract, much less the mediation or arbitration clauses therein.").  KPMG's proposals for 2008 through 2012, including the attached dispute-resolution provisions, are unenforceable because the Board's minutes failed to include enough terms and conditions of the KPMG letters and attachments; accordingly, determining the obligations and liabilities of both parties under those agreements is impossible.

---

[10] The engagement letters' arbitration provision provided that the FAA would govern arbitration.

## II. Burden of Recordation

¶34. "The burden of establishing the existence of an arbitration agreement, in line with the burden of establishing the existence of a contract, rests on the party seeking to invoke it." *Wellness, Inc.*, 178 So. 3d at 1292 (citing *Trinity Mission Health & Rehab. of Holly Springs v. Lawrence*, 19 So. 3d 647, 651-52 (Miss. 2009)). "It is the responsibility of the entity contracting with the Board, not the responsibility of the Board itself, to ensure that 'the contract is legal and properly recorded on the minutes of the board.'" *Wellness, Inc.*, 178 So. 3d at 1291 (citations omitted); *see also Jackson Equip. & Serv. Co. v. Dunlop*, 172 Miss. 752, 160 So. 734, 737 (1935) ("It is incumbent upon persons or corporations making contracts with a county to see that they are legal contracts."). KPMG, the party seeking to invoke the dispute-resolution clause, must first establish the existence of a contract including such a clause. KPMG has not met its burden. KPMG failed to ensure that the letters and their attachments were legally and properly recorded on the Board's minutes.

¶35. The Board's minutes failed to include any terms or conditions referenced in the KPMG letters in 2008 and 2009. The Committee's minutes that were incorporated into the Board's minutes by reference in 2008 and 2009 also failed to identify any of the terms or conditions referred to in KPMG's letters. In 2010, 2011, and 2012, no mention of the KPMG letters can be found in the minutes of the Board. No evidence in the Board's minutes demonstrates that Singing River engaged KPMG to perform audit services in those years. It was KPMG's folly to rely upon the Board to record the terms and conditions of the letters in its minutes. *Bridges v. Clay Cty. Supervisors*, 58 Miss. 817, 820 (1881). Because the

20

terms and conditions of KPMG's 2008, 2009, 2010, 2011, and 2012 letters were not spread across the Board's minutes, the obligations and liabilities of the parties cannot be determined, and, therefore, the "court cannot enforce the contract[s], much less the mediation or arbitration clauses [referenced] therein." *Wellness, Inc.*, 178 So. 3d at 1291.

### III. Delegation Clause

¶36. Though KPMG argues in its brief that the Court's first inquiry must be whether the letters are enforceable contracts, KPMG proceeds to argue that the dispute-resolution provisions contain a "delegation clause"; thus, KPMG asserts that an arbitrator, not the Court, must decide "[a]ny issue concerning the extent to which any dispute is subject to arbitration" as well as "any dispute concerning the applicability, interpretation, or enforceability of these dispute-resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable." KPMG asserts that the issue of whether the letters are enforceable under Mississippi's minutes rule is for an arbitrator to decide. We disagree. Pursuant to the minutes rule, the letters signed by Crews are unenforceable in their entirety. Thus, the delegation clause contained in the dispute-resolution provision attached to the engagement letters is unenforceable as well. This issue is without merit.

### IV. Collateral Estoppel

¶37. KPMG next argues that the trial court was collaterally estopped from ruling that the dispute-resolution provision in the proposal letters was not valid and enforceable, because a federal district court found that Singing River and KPMG had entered into a valid arbitration agreement. *Jones v. Singing River Health Serv's Found.*, Nos. 1:14CV447-LG-

RHW, 1:15CV1 -LG- RHW, 1:15CV44 -LG- RHW, 2016 WL 1254385 (S. D. Miss. March 29, 2016).

¶38.    Mississippi's doctrine of collateral estoppel "precludes relitigating a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action." *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836, 845 (Miss. 2016) (citation omitted).  These elements are not met here.  The federal district court did not consider whether the letters were spread across the Board's minutes.  Rather, the district court found only that Singing River was implicitly authorized to enter into an arbitration agreement under Mississippi Code Section 41-13-35(5).[11]  Because no element of collateral estoppel is met, this issue is without merit.

## V.    Direct-Benefit Estoppel

¶39.    KPMG last argues that the trial court erred by refusing to compel Singing River to the arbitral forum pursuant to the doctrine of direct-benefit estoppel.  "Direct-benefit estoppel involve[s] *non-signatories* who, during the life of the contract, have embraced the contract despite their *non-signatory status*, but then, during litigation, attempt to repudiate the arbitration clause in the contract."  *Scruggs v. Wyatt*, 60 So. 3d 758, 767 (Miss. 2011) (emphasis added) (quoting *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)).  The doctrine of direct-benefit estoppel applies to non-signatories.  Michael Crews signed the letters "on behalf of Singing River[.]"  Furthermore, a public

---

[11] Singing River argues that community hospitals do not have statutory authority to enter into arbitration agreements.  The Court declines to address this argument, since the minutes rule bars enforcement of the engagement letters in their entirety.

22

board may not be bound by estoppel unless the agreement at issue is duly and lawfully entered upon its minutes. ***Butler v. Bd. of Supervisors for Hinds Cty.***, 659 So. 2d 578, 582 (Miss. 1995) (quoting ***Colle Towing Co., Inc. v. Harrison Cty.***, 213 Miss. 442, 57 So. 2d 171, 172 (1952)). As such, the doctrine of direct-benefit estoppel does not apply. This issue is without merit.

## CONCLUSION

¶40. KPMG's 2008, 2009, 2010, 2011, and 2012 letters were not spread across the Board's minutes. The Court cannot enforce these contracts or the dispute-resolution clauses attached to them. KPMG's additional arguments concerning the delegation clause, collateral estoppel, and direct-benefit estoppel are without merit. The trial court's order denying KPMG's motion to compel arbitration is affirmed. The case is remanded for further proceedings.

¶41. **AFFIRMED AND REMANDED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**