# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01696-SCT

*WELLNESS, INC., d/b/a WELLNESS*
*ENVIRONMENTS*

*v.*

*PEARL RIVER COUNTY HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2014 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. TUCKER MITCHELL |
| | STEPHEN DEAN STAMBOULIEH |
| ATTORNEYS FOR APPELLEE: | THOMAS L. KIRKLAND, JR. |
| | ALLISON CARTER SIMPSON |
| | ANDY LOWRY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/19/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The administrator of the Pearl River County Hospital, Michael Boleware, entered into

a contract with Wellness, Inc., for Wellness to provide furnishings, fixtures, equipment, and

systems for the Hospital's renovation.  The Hospital subsequently sued Wellness and other

defendants not party to the instant appeal, alleging fraud, conspiracy, breach of contract, and

other causes of action.  Before trial commenced, Wellness moved to compel mediation and

arbitration and to stay proceedings. After a hearing on the motion, the circuit court denied the motion in its entirety. Aggrieved, Wellness appeals. Finding no error, we affirm.

## FACTUAL BACKGROUND

¶2. Pearl River Community Hospital is a community hospital in Poplarville, Mississippi; a Board of Trustees governs the hospital. In June 2010, the Hospital employed Michael Boleware as its Chief Executive Officer. Boleware and another individual, Hope Thomley, began to engage with outside companies, not party to the instant appeal, for various projects around the Hospital. On September 14, 2011, Boleware executed an Agreement for Furniture, Furnishings, Fixtures, Equipment and Systems with Wellness (the "Wellness Agreement"). The Agreement concerned the renovation of twelve rooms within the hospital, and work on the rooms began promptly after the agreement was executed. The minutes of the Board of Trustees through 2011 and 2012 mention Wellness Environments and financing the renovation Wellness was carrying out, but the Wellness Agreement itself and its terms are never discussed.

¶3. In November 2013, the Hospital sued Wellness and other defendants, alleging fraud, conspiracy, and other causes of action. Defendants removed the case to federal court in December 2013, but the federal court decided in September 2014 that removal had been improper. The case was then remanded to state court: specifically, the Pearl River County Circuit Court. *Pearl River County Hospital v. Walters*, No. 1:13-CV-00447-HSO-RHW (S.D. Miss. Sept. 12, 2014). The Hospital's suit was then consolidated with other suits brought by parties separate from the appeal. The Wellness Agreement contains an arbitration

2

clause within a section entitled "Standard Terms and Conditions," so Wellness filed a Motion to Compel Mediation and (if Necessary) Arbitration and to Stay Proceedings on October 24, 2014. The Hospital denied then, as it does now, that there was any agreement at all to mediate or arbitrate. After a hearing, the trial court denied the motion. Wellness filed an appeal on December 1, 2014, arguing that the trial court erred in denying its motion to compel mediation and arbitration. *See* **Tupelo Auto Sales, Ltd. v. Scott**, 844 So. 2d 1167, 1170 (¶ 10) (Miss. 2003) ("Adopting the procedure of the Federal Arbitration Act and following the lead of other jurisdictions, we find an appeal may be taken from an order denying a motion to compel arbitration.") We granted Wellness's Motion To Stay Proceedings in the trial court pending the outcome of the appeal on January 14, 2014.

## ISSUES

¶4. In order to determine the ultimate issue of whether the trial court erred in denying the Motion to Compel Mediation and (If Necessary) Arbitration and to Stay the Proceedings, the Court must address the following issues:

> **I.   Whether the Wellness Agreement was sufficiently spread upon the Board's minutes such that the Hospital can be said to have agreed to mediate or arbitrate any disputes with Wellness.**
>
> **II.  Whether the facts prove that the Court should carve out an exception to the minutes requirement for Wellness.**

## STANDARD OF REVIEW

¶5. When reviewing a trial court's disposition of a motion to compel arbitration, the Court applies a *de novo* standard of review. **Caplin Enters., Inc. v. Arrington**, 145 So. 3d 608, 612

3

(Miss. 2014); *Compere's Nursing Home, Inc. v. Estate of Farish ex rel. Lewis*, 982 So. 2d 382, 383 (Miss. 2008) (citing *Sullivan v. Mounger*, 882 So. 2d 129, 132 (Miss. 2004)).

## ANALYSIS

¶6.     The trial court did not err by denying the Motion to Compel Mediation and (If Necessary) Arbitration and to Stay the Proceedings.

> **I.     A valid arbitration agreement between the Hospital and Wellness does not exist because the Board's minutes do not include sufficient reference to liabilities and obligations to mediate or arbitrate**.

¶7.     "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of America*, 475 U.S. 643, 776 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).  As such, the Court must first determine if there is a contract between the Hospital and Wellness within which the parties agreed to mediate or arbitrate their claims.

> [T]he courts must first determine whether the parties have agreed to arbitration of the dispute and if it is determined that they have, then a determination must be made as to "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." . . . As we have noted on prior occasions, this first prong has two sub-factors: "(1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement."

*Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116, 1119-20 (Miss. 2007) (quoting *Rogers-Dabbs Chevrolet-Hummer v. Blakeny*, 950 So. 2d 170, 173 (Miss. 2007)).

¶8.     Wellness asserts that a valid contract exists because the Wellness Agreement was executed by Boleware, the Administrator and CEO of the Hospital, and Franklin Jarman, the

CEO of Wellness Environments. The Hospital responds that a valid contract does not exist, even though its Administrator/CEO executed the Wellness Agreement, because the terms of the Wellness Agreement are not sufficiently spread upon the minutes of the Board of Trustees.

¶9. Mississippi Code Section 41-13-35(3) (Rev. 2013) requires a board of trustees of a community hospital to "keep minutes of its official business[.]" A community hospital board of trustees, as does any public board in the State of Mississippi, speaks and acts only through its minutes. ***Thompson v. Jones Cty. Cmty. Hosp.***, 352 So. 2d 795, 796 (Miss. 1977); *see also **Coast Materials v. Harrison Cty. Dev. Comm'n***, 730 So. 2d 1128, 1132 (Miss. 1998); ***Nichols v. Patterson***, 678 So. 2d 673, 677 (Miss. 1996). And where a public board engages in business with another entity, "[n]o contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action of the board[.]" ***Burt v. Calhoun***, 231 So. 2d 496, 499 (Miss. 1970).

¶10. However, the entire contract need not be placed on the minutes. Instead, it may be enforced where "enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." ***Thompson***, 352 So. 2d at 797. However, it is the responsibility of the entity contracting with the Board, not the responsibility of the Board itself, to ensure that "the contract is legal and properly recorded on the minutes of the board." ***Id.*** (citing ***Burt v. Calhoun***, 231 So. 2d at 499).

¶11.    In **Thompson**, the Court considered a claim for unpaid salary by a former employee of Jones County Community Hospital.  **Thompson**, 352 So. 2d at 795.  The trial court had granted a motion to dismiss because the employment contract itself never had been entered upon the minutes of the board of trustees, nor had "enough of the substance of the contract" been contained therein.  **Id.**  The minutes had stated only that a four-year contract as executive director of the hospital had been granted to the plaintiff and that its acceptance had been unanimous after "appropriate discussions."  **Id.** at 795-96.  The Court stated that because the minutes contained "no reference to the salary to be paid plaintiff for his services, . . . the Court may not determine the amount of the salary."  **Id.** at 797-798.

¶12.    By contrast, in **Cheatham v. Smith**, 92 So. 2d 203 (Miss. 1957), *superceded by statute*, Ella Smith's teaching employment contract was enforced, despite it not having been attached to the minutes associated with it or included in the minutes in its entirety.  The **Thompson** Court cited **Cheatham** for the premise that it is not, in fact, "necessary for the entire contract to be placed upon the minutes of a public board."  **Thompson**, 352 So. 2d at 797.  In **Cheatham**, the Board of Education's minutes showed that Ella Smith's name had been included in a list of teachers who had been selected and approved by the Board, and her salary had been listed in the minutes as $1,800 per year.  The Board's minutes showed that the seconded motion to approve the superintendent's authority to create the teaching contracts had not expressly been approved by the Board, but the Court held that the omission was "clerical error" and that Smith indeed had a valid teaching contract.  **Cheatham**, 92 So. 2d at 208.

¶13. In the instant case, the minutes from the Board of Trustees' meetings do not set forth sufficient terms to establish the liabilities and obligations of the parties, and thus the court cannot enforce the contract, much less the mediation or arbitration clauses therein. In September 2011, the Board discussed the reduction in a financing rate, and that Wellness would renovate twelve rooms "for a cost of less than $5,000.00 per room." The Board also discussed a time frame for the renovation and the cost per room at a second meeting in September 2011, and the Board carried a motion to continue with the renovation of four rooms at a time. On May 31, 2012, Trustee Jones "tendered a motion to accept Wellness Environment's representation that it is a SINGLE/SOLE SOURCE provider for the materials and things" in the Kingsbridge Lease and Contract that had been discussed at a previous Board meeting. The motion was seconded and carried unanimously. A second motion was tendered "to authorize the Chair of the Board of Trustees to approve for payment the Wellness Environment invoice in the sum of $146,357.00 and to forward the approved invoice to Kingsbridge for payment." The second motion, too, was seconded and carried unanimously. The above-described motions constitute the sole mentions of any contract between the Board of Trustees for Pearl River Community Hospital and Wellness.

¶14. The Court will not draw an enforceable arbitration clause from such general, imprecise language. Unlike Smith in **Cheatham**, whose name and salary were clearly displayed upon the Board of Education's minutes, the specific Wellness Agreement, much less its arbitration clause, is not mentioned by the Board at all. The omission brings Wellness's situation more in line with that of the plaintiff in **Thompson**, whose employment

7

contract that he sought to have enforced was referenced in broad strokes by his employer, but with so little detail as to its terms that the Court refused to do so. "This Court has held that '[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" ***Trinity Mission Health & Rehab. of Holly Springs v. Lawrence***, 19 So. 3d 647, 651 (¶ 14) (Miss. 2009) (quoting ***Pre-Paid Legal Servs., Inc. v. Battle***, 873 So. 2d 79, 83 (Miss. 2004)). The burden of establishing the existence of an arbitration agreement, in line with the burden of establishing the existence of a contract, rests on the party seeking to invoke it. ***Trinity Mission***, 19 So. 3d at 651-52 (quoting ***Marinder Healthcare, Inc. v. Green***, 2006 WL 162581 (N.D. Miss. Jun. 7, 2006)). We find that Wellness has not carried its burden of proof, so the trial court did not err in denying the Motion to Compel Mediation and (If Necessary) Arbitration.

**II.     Stare decisis and public policy forbid the Court from carving out a Wellness exception.**

¶15.    Wellness argues that, even if the Court finds that the Agreement was not sufficiently spread upon the minutes, the Court should create a "Wellness exception" to the requirement that a contract be spread upon the minutes of a Board's meeting. We decline to do so.

¶16.    In support of its request, Wellness cites ***Community Extended Care Centers, Inc. v. Board of Supervisors for Humphrey's County***, 756 So. 2d 798 (Miss. 1999), which states that the reasoning behind requiring contracts to be spread upon the minutes is that the minutes rule "protects[s] the board from being bound by the unauthorized acts of individual members of the board or an agent thereof." Indeed, by enforcing the minutes rule, the Court has recognized the importance of recorded, express consent by all board members to board

8

actions, as board members are elected officials charged with the protection of the public's funds. ***Butler v. Bd. of Supervisors for Hinds County***, 659 So. 2d 578, 579 (Miss. 1995).

¶17.   However, ***Butler*** goes further, revealing the broader purpose of the minutes requirement.  The ***Butler*** Court went on to state that if the board were not required to make the entries onto its minutes,

> an individual member of the board or agent thereof would be capable of binding the board and expending the public taxpayer's money without the benefit of the consent of the board as a whole which was elected and responsible for such purposes.  In sum, the policy of protecting the public's funds for use and for the public is paramount to other individual rights which may also be involved.

*Id.* at 579.   Thus, the minutes requirement has two major functions:

> (1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and (2) that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, and to which the public may have access to see what was actually done.

***Lee County v. James***, 174 So. 76, 77 (Miss. 1937).

¶18.   Wellness argues that, because the Board discussed the Agreement on the minutes multiple times; because the Board members testified at depositions that the Agreement was ultimately approved; and because Wellness received payments from the Board, that the Board clearly intended to ratify the Wellness Agreement, and so Wellness is entitled to an exception from the minutes requirement.  We disagree.  Wellness had a clear and well-established duty to ensure that sufficient terms of its contract with the hospital were spread upon the Board's

9

minutes. Its failure to fulfill its own duty does not entitle it to an exception from the enforcement of a well-established policy that allows members of the tax-paying public to consult a Board's minutes to "see what was actually done." *Lee County*, 174 So. at 77. "[T]he importance of the public policy involved will be the overriding factor in such disputes even when the rule may work an apparent injustice." *Butler*, 659 So. 2d at 582.

## CONCLUSION

¶19. Under *Thompson* and *Cheatham*, the Court cannot enforce an arbitration clause from a contract that is not sufficiently spread upon a Board's minutes. The duty belonged to Wellness to ensure that sufficient terms and liabilities of the Wellness Agreement were spread upon the minutes of the Board of Trustees before asking the courts to enforce that Agreement. Wellness failed to fulfill that responsibility. Accordingly, the Circuit Court of Pearl River County did not err in denying Wellness's Motion to Compel Mediation and (if Necessary) Arbitration and to Stay Proceedings. The judgment of the circuit court is affirmed and the case is remanded for further proceedings.

¶20. **AFFIRMED AND REMANDED**.

**RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. WALLER, C.J., AND DICKINSON, P.J., NOT PARTICIPATING.**

10