# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00071-SCT

*JACKSON COUNTY, MISSISSIPPI*

*v.*

*KPMG, LLP*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/2017 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| TRIAL COURT ATTORNEYS: | WILLIAM LEE GUICE, III |
| | MARIA MARTINEZ |
| | R. DAVID KAUFMAN |
| | TAYLOR BRANTLEY McNEEL |
| | AMELIA TOY RUDOLPH |
| | PATRICIA ANNE GORHAM |
| | EDWARD C. TAYLOR |
| | EARL L. DENHAM |
| | WILLIAM HARVEY BARTON |
| | BRETT K. WILLIAMS |
| | A. KELLY SESSOMS, III |
| | HANSON DOUGLAS HORN |
| | KRISTI ROGERS BROWN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM LEE GUICE, III |
| | MARIA MARTINEZ |
| ATTORNEYS FOR APPELLEE: | R. DAVID KAUFMAN |
| | TAYLOR BRANTLEY McNEEL |
| | LAUREN OAKS LAWHORN |
| | AMELIA TOY RUDOLPH |
| | PATRICIA ANNE GORHAM |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 01/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Recently, this Court unanimously held that KPMG, LLP, could not enforce arbitration agreements attached to five annual engagement letters with Singing River Health System (Singing River), a community hospital, because the terms and condition of the letters were not sufficiently spread upon the hospital board's minutes to create an enforceable contract. *KPMG, LLP v. Singing River Health Sys.*, 2017-CA-1047-SCT, 2018 WL 5291088 (Miss. Oct. 25, 2018), *reh'g denied* Jan. 10, 2019. In the present appeal, KPMG seeks to enforce the *very same* arbitration agreements attached to the *very same* engagement letters with Singing River—but this time the entity against which KPMG seeks arbitration enforcement is Jackson County, Mississippi, which acted as Singing River's bond guarantor. For the same reason we affirmed the trial court's denial of KPMG's motion to compel arbitration in *KPMG, LLP v. Singing River Health System*, we reverse and remand the trial court's *grant* of KPMG's motion to compel arbitration in this case.

## Background Facts and Procedural History

¶2. Jackson County owns Singing River, a community hospital organized in accordance with the community hospital statutes and governed by a Board of Trustees. Miss. Code Ann. § 41-13-10 to -107 (Rev. 2013). For years, Singing River used the annual auditing services of KPMG. But in 2013, to save costs, Singing River hired Horne, LLP, to conduct the hospital's annual audit. Through Horne, Singing River learned that KPMG's prior annual audits had resulted in an $88,000,000 overstatement of Singing River's accounts receivable.

Singing River also claimed KPMG's negligent audits left it unaware that its employee pension plan was underfunded by approximately $150,000,000.

¶3.    In October 2015, Singing River sued KPMG in Hinds County Circuit Court, alleging breach of contract, negligence, and professional malpractice. *KPMG, LLP*, 2018 WL 5291088, at *3 (¶13). In March 2016, Jackson County filed its own lawsuit against KPMG in Jackson County Circuit Court. According to Jackson County's complaint, "KPMG failed to conduct its audits of [Singing River] pursuant to its contractual and professional duties, proximately causing damage to Jackson County." Specifically, Jackson County asserted "KPMG's actions left [Singing River] with a massive financial deficit, an underfunded pension plan, defending multiple lawsuits brought by members of its pension plan, and out of compliance with its bond covenants which has negatively affected [Singing River]." KPMG's actions also negatively impacted Jackson County, as Singing River's bond guarantor. Had KPMG's statements accurately reflected Singing River's financial status, Jackson County asserts it would have never guaranteed the bonds. But based on KPMG's negligent audit, Jackson County did guarantee certain bond issues to the benefit of Singing River, which led to a downgrade in its bond rating. Jackson County also alleged KPMG's actions led to various federal lawsuits against Singing River. And in order to facilitate a $149,950,000 settlement by Singing River, Jackson County agreed to contribute $13,600,000 to Singing River to support indigent care and prevent bond default by supporting operations.

¶4.    KPMG responded to both lawsuits by filing motions to compel arbitration. KPMG asserted that Singing River and Jackson County were respectively "bound to the arbitration

3

provisions, including the delegation clauses, contained in the audit engagement letters between KPMG and Singing River" for the relevant fiscal years—2008 to 2012.[1] Both Singing River and Jackson County responded that the KPMG Engagement Letters were not spread on the hospital board's minutes as required by Mississippi's "minutes rule." So no enforceable contract—and thus no enforceable arbitration clause—ever came into existence.

¶5. The Hinds County Circuit Court agreed with Singing River and denied KPMG's motion to compel arbitration in Singing River's lawsuit, which KPMG appealed to this Court. *KPMG, LLP*, 2018 WL 5291088, at *5 (¶18). The Jackson County Circuit Court, however, sided with KPMG, finding Jackson County's "minutes rule" argument was for the arbitrator, not the court, to decide. So the court granted KPMG's motion to compel arbitration in Jackson County's suit, which Jackson County appealed. *See Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (Miss. 2010) (holding that "any final decision with respect to arbitration is appealable to this Court pursuant to Mississippi Rules of Appellate Procedure 3 and 4").

¶6. On October 25, 2018, this Court unanimously resolved KPMG's appeal against Singing River in Singing River's favor, finding the minutes rule applied and prevented an enforceable arbitration agreement ever arising. *KPMG, LLP*, 2018 WL 5291088, at *5-9

---

[1] Although Jackson County was not a party to the alleged contract created by the engagement letters, Jackson County itself claims the auditing services covered by the engagement letters were partly for its benefit. So if the engagement letters—and thus the arbitration provisions attached to them—were enforceable against Singing River, they would likewise be enforceable against Jackson County. *See Qualcomm Inc. v. Am. Wireless License Grp., LLC*, 980 So. 2d 261, 269 (Miss. 2007) (holding that "a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary or if the doctrine of equitable estoppel applies").

(¶¶18-33). This leaves only the present appeal, which also turns on the minutes rule. Jackson County's primary appellate argument is that the trial court reversibly erred when it failed to recognize and apply the minutes rule to deny arbitration.[2] KPMG counters that the trial court correctly applied the arbitration agreement's "delegation clause" to rule that any enforcement issues based on the minutes rule is for the arbitrator, and not the court, to decide.

**Discussion**

¶7. This Court reviews the grant of a motion to compel arbitration de novo. *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002).

¶8. Despite the de novo review, KPMG asserts Jackson County's minutes-rule argument is off limits. Citing the "delegation clause" contained in the arbitration provisions, KPMG argues any application of the minutes rule goes to enforceability of the contracts containing

---

[2] Jackson County raised six alternative arguments "to be considered only if the threshold argument asserted above is rejected":

(1) Section 100 of the Mississippi state constitution prohibits the enforcement of arbitration against Jackson County.

(2) No authority exists for the imposition of arbitration against a political subdivision/Jackson County.

(3) Equitable estoppel is not applicable to Jackson County.

(4) Jackson County's claims are not derivative of Singing River's.

(5) Collateral estoppel is not applicable to Jackson County.

(6) Federal law does not preempt the Mississippi state constitution.

Because the minutes-rule issue controls, we need not address these alternative arguments.

the arbitration provisions, not the formation. And because Singing River has "stipulated" that it accepted KPMG's engagement letters, according to KPMG, there is no question that contracts containing arbitration provisions were formed. Instead, the only question is whether the contract can be *enforced* based on the minutes rule. And that question, KPMG insists, is for the arbitrator, not the court, to decide.[3]

¶9.     This Court, however, has already rejected this argument, holding that "Singing River cannot stipulate to that which is prohibited by law." ***KPMG, LLP***, 2018 WL 5291088, at *8 (¶32). The minutes rule is clear. "[P]ublic boards"—including boards of trustees for community hospitals such as Singing River—"speak only through their minutes, and their acts are evidenced *solely* by entries on their minutes." ***Id.*** at *5 (¶19) (emphasis added) (citations omitted). "And where a public board engages in business with another entity, no contract can be implied or presumed"—or, in this case, stipulated to. ***Id.*** at *5 (¶20) (quoting ***Wellness, Inc. v. Pearl River Cty. Hosp.***, 178 So. 3d 1287, 1291 (Miss. 2015)). Instead, the contract "must be stated in express terms and recorded on the official minutes and the action of the board." ***Id.***

¶10.     So Jackson County's minutes-rule argument goes to the issue of whether a contract containing an arbitration provision was ever formed in the first place. Contrary to the trial

---

[3] According to the delegation clause in the arbitration provisions:

Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.

court's ruling, this was a question of law for the trial court, and not the arbitrator, to decide. *Wellness, Inc.*, 178 So. 3d at 1290-91 (applying minutes rule to "first determine if there is a contract between the Hospital and Wellness within which the parties agreed to mediate or arbitrate their claims").

¶11.     Moreover, this was a question definitely answered by this Court in *KPMG, LLP*. Under the minutes rule, "the entire contract need not be placed on the minutes." *Wellness, Inc.*, 178 So. 3d at 1291. But "enough of the terms and conditions of the contract [must be] contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." *Id.*  As this Court recognized in *KPMG, LLP*, "the Board's minutes are exceedingly sparse as to KPMG's proposals." *KPMG, LLP*, 2018 WL 5291088, at *7 (¶25).  In May 2008, the Board's minutes reflect that the Board approved the 2008 engagement letter, but the minutes failed to contain "a single term or condition of KPMG's proposal letter, including what KPMG was engaged to do, and how much KPMG was to be paid." *Id.* at *7 (¶26).  In May 2009, the Board minutes reflect that the Board approved two engagement letters, but "[t]he minutes do not reflect that either letter was from KPMG, much less any details, liabilities, or obligations of the proposal." *Id.* at *8 (¶28).  And "[i]n fiscal years 2010, 2011, and 2012, the minutes are completely devoid of *any reference* to KPMG's letters." *Id.* at *8 (¶30) (emphasis added).  So this Court cannot enforce the engagement letters, "much less the separately attached dispute-resolution provision."[4] *Id.* at *7 (¶27).  *See also Wellness, Inc.*, 178 So. 3d at 1291 (holding that the

---

[4] In *KPMG, LLP*, this Court also expressly rejected KPMG's argument that the minutes of Singing River's Audit and Compliance Committee contained sufficient reference

7

board minutes did "not set forth sufficient terms to establish the liabilities and obligations of the parties, and thus the court cannot enforce the contract, much less the mediation or arbitration clauses therein").

¶12. Therefore, the trial court erred in granting KPMG's motion to compel arbitration. Consistent with our holding in **KPMG, LLP**,[5] we reverse the trial court's order and remand the case to the trial court with an instruction to deny the motion to compel arbitration.

¶13. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

to the engagement letters and its terms to satisfy the minutes rule. This Court found that the Committee's minutes were not admissible evidence of Board action. Instead, only the Board's minutes can testify to Board action. **KPMG, LLP**, 2018 WL 5291088, at *8 (¶31).

[5] After we handed down **KPMG, LLP**, the United States Supreme Court issued its opinion in **Henry Schein, Inc. v. Archer & White Sales, Inc**, No. 17-1272 (U.S. Jan. 8, 2019). While KPMG cites this case as supplemental authority, we find this opinion does not direct a different outcome.

First, **Henry Schein, Inc.**, dealt specifically with the lower court's application of the "wholly groundless" exception to when parties agree that arbitrability questions will be decided by the arbitrator. **Id.**, slip op. at 3. And neither **KPMG, LLP** nor this appeal turn on the now-rejected "wholly groundless" exception.

Second, in **Henry Schein, Inc.**, the Supreme Court reaffirmed "that parties may delegate threshold arbitrability questions to the arbitrator, *so long as* the parties' agreement does so by 'clear and unmistakable' evidence." **Id.**, slip op. at 6 (emphasis added) (citing **First Options of Chicago, Inc. v. Kaplan**, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). *See also* **Rent-A-Ctr., W., Inc. v. Jackson**, 561 U.S. 63, 69 n.1, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (also noting the **First Options** caveat that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so"). That particular notion is essentially why KPMG's arbitration argument fails. Under the minutes rule, we find no evidence spread upon the minutes that KPMG and Singing River agreed to arbitrate, let alone delegate arbitrability questions to an arbitrator. **KPMG, LLP**, 2018 WL 5291088, at *10 (¶¶35-36).