# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00445-COA

SUSAN C. CUTRER, RICHARD MICHAEL                    APPELLANTS
SAUCIER, BARBARA JAMES, SHERMAN
MILLER, KAREN REEVES, AND MICHAEL
REEVES

v.

SINGING RIVER HEALTH SYSTEM                          APPELLEE

DATE OF JUDGMENT:            06/28/2017
TRIAL JUDGE:                 HON. JAMES D. BELL
COURT FROM WHICH APPEALED:   JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:    RUSSELL S. GILL
                             JOSEPH R. TRAMUTA
                             SCOTT CORLEW
ATTORNEYS FOR APPELLEE:      A. KELLY SESSOMS III
                             BRETT K. WILLIAMS
NATURE OF THE CASE:          CIVIL - CONTRACT
DISPOSITION:                 AFFIRMED - 02/11/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### CARLTON, P.J., FOR THE COURT:

¶1.     Appellants/Plaintiffs (plaintiffs), former employees of defendant/appellee Singing

River Health System (Singing River), elected to take a special early retirement benefit

offered by Singing River in May 2005. The special early retirement benefit was based upon

a retiree's "age and creditable years of service in [Singing River's] Retirement Plan." Like

any other retiree, the plaintiffs also had the option to continue other benefits, including

continuation of coverage under Singing River's Health Plan.

¶2. In 2005, when the special early retirement benefit was offered, retirees with twenty or more years of service, like the plaintiffs, could opt to continue coverage under Singing River's Health Plan by paying "the employee's share" of the applicable health insurance premium until they were Medicare-eligible, which was less than the full premium. In 2014, however, Singing River began requiring retirees, including the plaintiffs, to pay the full monthly premium in order to maintain coverage under Singing River's Health Plan. Current employees continued to pay just their share of the health insurance premium.

¶3. In the light of this change, the plaintiffs sued Singing River in the Jackson County Circuit Court, alleging that they should be able to continue paying the employee's share of the premium until they are eligible for Medicare or have reached sixty-five years of age. The plaintiffs alleged breach of contract and anticipatory breach of contract, and they sought a declaratory judgment in this matter. Singing River denied the plaintiffs' claims primarily based upon reservation-of-rights language contained within the Singing River Health Plan, which provides that Singing River "has reserved the right to amend, modify, or suspend the terms of the [Health] Plan at any time and for any reason and to cancel or terminate the Plan and Benefits payable thereunder in whole or in part at any time and at its discretion." The circuit court ultimately granted summary judgment in Singing River's favor and dismissed the plaintiffs' lawsuit. The circuit court denied the plaintiffs' motion for reconsideration, and the plaintiffs appealed. For the reasons discussed below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶4. Susan R. Cutrer, Richard Michael Saucier, Barbara James, Sherman Miller, Karen

2

Reeves, and Michael Reeves (plaintiffs) are all retirees of Singing River. On May 5, 2005, Singing River notified eligible employees who were close to retirement of the opportunity to retire early with enhanced benefits. An amendment to Singing River's Employees' Retirement Plan and Trust Agreement delineating this special early retirement benefit was duly approved and adopted by Singing River's Board of Trustees.

¶5. Every eligible employee, including each of the plaintiffs, received a package of material from Singing River, including a May 5, 2005 memorandum from Paul Carter, Singing River's human resource director at the time. In the memorandum, Singing River announced its early retirement benefit for eligible employees and set forth "the two main reasons" that Singing River was "providing this special early retirement benefit," as follows:

1. To provide eligible employees who are close to retirement the opportunity to retire early with enhanced benefits, and

2. To enable [Singing River] to align staffing levels with current and projected patient volumes, minimizing the need for involuntary staff reductions.

¶6. The following items were also included in the special early retirement benefit package:

(1) "Information Guide, which included an Early Retirement Planning Worksheet to assist the recipients in estimating their retirement expenses";

(2) "Estimate Report of the recipient's estimated final retirement benefit amount";

(3) "Special Early Retirement Election Statement (Election Statement)"; and

(4) "Schedule of Informational Meetings."

3

In his May 5, 2005 memo, Carter encouraged each recipient to "examine the enclosed material carefully." Each of the plaintiffs were eligible for, and elected to take, the special early retirement benefit.

¶7.    The Information Guide provided information about the special early retirement benefit, which was based upon the recipient's "age and creditable years of service in the Retirement Plan." In particular, the Information Guide provided:

> Our retirement and employment records show that you qualify for a special early retirement benefit. You qualify for Group 1 benefits based on your age and creditable years of service in the Retirement Plan.
>
> Group 1
> Includes all employees who have attained age 50 and completed 25 years of creditable service by December 31, 2005. The benefit payable is determined by adding 5 years to your years of service.
>
> Group 2
> Includes all employees who have attained age 55 and completed 15 years of creditable service by December 31, 2005. The benefit payable is determined by adding 5 years to your years of service and 5 years to your age, with a 3% reduction for each year under the age of 65 to a maximum of 15%.

The record reflects that all of the plaintiffs qualified for Group 1 benefits.

¶8.    The Information Guide also explained that "[the] Retirement Plan is a defined benefit plan that provides you a regular source of monthly income and a cost-of-living supplement annually." In this regard, the Information Guide provided that "[t]he factors most significant in determining your monthly retirement benefit amount are your number of creditable service years, your age, and your average quarterly earnings determined by averaging your earnings for the final quarter and the highest consecutive quarters within the past 10 years."

¶9.    Further, the Information Guide had a "Questions & Answers" section "to present some

4

of the questions commonly asked by employees facing this type of decision." These questions pertained to questions about the timing of acceptance, whether it was truly voluntary, and where to obtain additional help in understanding the recipient's Estimate Report projecting the recipient's estimated early retirement benefit amount. The "Question & Answer" section also included a question about deferred payments, referring to these payments as "pension payments," as follows:

> Q. I'm not ready to retire, but would like to use this opportunity to pursue other career options. Can I defer my pension payments?
>
> A. No. The Special Early Retirement Plan Benefit allows you to retire now with enhanced retirement payments.

¶10. As noted, the special early retirement benefit package contained an Election Statement, and each plaintiff executed this form. The Election Statement provided that the person signing the form was electing "special early retirement" and understood that he or she would have credited service of a specified number of years with Singing River "for purposes of calculating [his or her] early retirement benefit."

¶11. Under a section in the Information Guide entitled "Continuation of Benefits," the retirement benefit package recipients were informed that "employees electing special early retirement are eligible to continue many benefits for specified periods," including "health, life, cancer, dental, and vision insurance." With respect to health insurance, the "Continuation of Benefits" section explained how retirees could continue these benefits as follows:

> Health Insurance: Retiring employees and their surviving spouses may continue coverage under the Health Plan, by paying the employee's share of

5

the premium in advance until the retiree becomes eligible for Medicare. Retirees eligible for Medicare must pay the full premium to continue coverage in the Health Plan. It is important to note that Health Plan premiums are subject to change annually.

The Health Plan referred to in this section is a document over ninety pages long. It was made available to all Singing River employees, including the plaintiffs. The Health Plan includes sections covering the Schedule of Benefits, Schedule of Eligibility, Benefits Provided, and Limitations and Exclusions, along with many other provisions describing the health plan available to Singing River employees. With respect to coverage for retirees,[1] the Health Plan provides that "[a]n Eligible Person who is a Retiree must apply for coverage under the Plan no later than the next Open Enrollment Period immediately following the date of first becoming eligible as a Retiree."

¶12. Under the Health Plan, Singing River also specifically reserves its right to "amend, modify, or suspend" the terms of the Health Plan, as follows:

> An Eligible Person who is a Retiree must apply for coverage under the Plan no later than the next Open Enrollment Period immediately following the date of first becoming eligible as a Retiree. The Group has reserved the right to amend, modify[,] or suspend the terms of the Plan at any time and for any reason and to cancel or terminate the Plan and Benefits payable thereunder in whole or in part at any time and at its discretion. While the Group intends upon the adoption of this Plan to offer coverage to Eligible Retirees indefinitely, coverage for Eligible Retirees may have to be reduced or curtailed altogether in the future for reasons which develop or arise unexpectedly.

¶13. In his August 19, 2015 deposition, Carter explained that continuation of the health

---

[1] "Retiree" is defined in the Health Plan as "[a] former Eligible Member of the Plan who is entitled to retirement health benefits under the Plan." An "Eligible Person" is "[a] person entitled to apply to be a Participant [in the Plan] as specified in the Schedule of Eligibility."

6

insurance benefit as described in the Information Guide was "available to any employee that retired. So these were not special benefits just for early retirees." This is likewise evidenced by Article II(E)(4)(3) of the Health Plan, which provides:

> [Plan] Participants who retire with 20 or more years of service -- Participants and their surviving spouses, may continue coverage under this Plan, by paying the employee's share of the monthly premium in advance, until they become eligible for Medicare. Once they become Eligible for Medicare they may continue their coverage if they pay the full premium.

Carter elaborated on this point in his deposition, stating that "any employee that retired with twenty or more years of service at any time, inside or outside of the special early retirement benefit, was eligible to elect the continuation of health insurance" on these terms. The plaintiffs elected to continue health benefits under the Health Plan.

¶14. In late November 2010, Singing River's administration performed an annual review of the Health Plan and concluded that Singing River may need to change its guidelines for retiree enrollment. In a November 29, 2010 memorandum from Carter to Singing River's CEO, Carter explained that Singing River had surveyed other private and public employers and learned from the survey that six of seven health care organizations allowed retirees to enroll in their respective health care plans but required them to pay the full premium for coverage. Revised guidelines requiring retirees to pay the full premium for coverage in the future and a proposed transition plan were presented to the Singing River Board of Trustees on December 8, 2010. The Board of Trustees unanimously agreed to approve the revised guidelines for retiree enrollment in the Singing River Health Plan.

¶15. In late January, 2011, Carter issued a memorandum to all retirees who retired with

7

twenty-plus years of credited service, including the plaintiffs, that instructed them to review the change addressed in the memorandum regarding the premium amount a retiree must pay to participate in the Health Plan set to become effective January 1, 2014. The memorandum provided that the recipients currently paid the same amount that a full-time employee paid for health insurance coverage but that "[a]s of January 1, 2014, you will be required to pay the full monthly premium, in advance, to maintain coverage in [Singing River's] Health Benefit Plan." As the dates in the memorandum indicate, the retirees were given three years' notice of this change. Subsequently, on October 31, 2013, Singing River's Chief Human Resources Officer, Craig Summerlin, issued another memorandum to Singing River retirees, confirming that as of January 1, 2014, retirees would be required to pay the full monthly premium in advance to maintain coverage under Singing River's Health Plan.

¶16. The plaintiffs thereafter sued Singing River based upon the revised guidelines requiring them to pay the full monthly health insurance premium in order to maintain coverage under Singing River's Health Plan.[2] The plaintiffs claimed breach of contract, anticipatory breach of contract, and sought a declaratory judgment.

¶17. Singing River moved for summary judgment on the plaintiffs' claims, and the plaintiffs filed a cross-motion for partial summary judgment, seeking a determination that Singing River breached its "binding contracts" with them. The circuit court initially granted partial summary judgment in the plaintiffs' favor, leaving open only the issue of damages. On Singing River's motion for reconsideration, however, the circuit court reversed its

---

[2] The plaintiffs' lawsuits were consolidated in the circuit court.

8

decision. The circuit court granted summary judgment in Singing River's favor and dismissed the plaintiffs' lawsuit. The circuit court denied the plaintiffs' motion for reconsideration. The plaintiffs appealed.

## DISCUSSION

### I. The Circuit Court's Grant of Summary Judgment in Singing River's Favor

#### A. Standard of Review

¶18. This Court applies a de novo standard of review to a trial court's grant of summary judgment. *Handy v. Madison Cty. Nursing Home*, 192 So. 3d 1005, 1009 (¶14) (Miss. 2016). As set forth in Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

#### B. Summary Judgment

¶19. The core argument asserted by the plaintiffs in this case is that the circuit court erred when it reversed its decision granting partial summary judgment in their favor and, on Singing River's motion for reconsideration, granted summary judgment in Singing River's favor. In support of their argument, the plaintiffs assert that they "had valid and enforceable contracts with the hospital to, among other things, continue providing health insurance to [them] at the same rate as [Singing River's] employees." The plaintiffs further assert that they were damaged when Singing River breached these contracts by requiring them, as of January 2014, to begin paying the full monthly premium to maintain coverage under Singing

9

River's Health Benefit Plan, which Singing River admitted was a higher rate than that paid by employees.

¶20. In *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (¶13) (Miss. 2003) the Mississippi Supreme Court held that "[t]he elements of a valid contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." (Internal quotation mark omitted). The plaintiffs assert that all the elements of a valid contract are met in this case.

¶21. Addressing these elements, the plaintiffs assert that the contracting parties were the plaintiffs and Singing River, and the consideration for the contracts was to (1) provide eligible employees an opportunity to retire with enhanced benefits; and (2) to enable Singing River to align staffing levels with current and projected patient volumes, as stated in Paul Carter's May 5, 2005 memorandum to eligible employees that was part of the early retirement package.

¶22. The plaintiffs further assert that the agreement between them and Singing River was "sufficiently definite," *Rotenberry*, 864 So. 2d at 270 (¶13), because the Information Guide provided details about the retirement benefit package, and it specified the method of acceptance, which was that each recipient of the package was required to sign a Special Early Retirement Election Statement (Election Statement) if they decided to choose early retirement. As to the remaining elements of a valid contract, the plaintiffs assert that there is no dispute that the parties have the legal capacity to make the contract; the "negotiations

10

[between the parties] show[] there was mutual assent between the plaintiffs and the hospital;" and "there is no legal prohibition precluding contract formation between the hospital and the employees." *Id.*

¶23. The plaintiffs rely on the "Continuation of Benefits" section beginning on page six of the Information Guide to support their argument that they are contractually entitled to continue their health insurance benefits at the same rate as Singing River's employees until the plaintiffs are Medicare-eligible. As detailed above, this section informed the plaintiffs that "employees electing special early retirement are eligible to continue many benefits for specified periods." Among various other listed benefits, one of the benefits listed was continuation of health insurance, as follows:

> Health Insurance: Retiring employees and their surviving spouses may continue coverage under the Health Plan, by paying the employee's share of the premium in advance until the retiree becomes eligible for Medicare. Retirees eligible for Medicare must pay the full premium to continue coverage in the Health Plan. It is important to note that Health Plan premiums are subject to change annually.

¶24. According to the plaintiffs, the first sentence found in this provision of the Information Guide obligates Singing River to continue providing health insurance coverage to them at the employee premium rate until they become eligible for Medicare—and Singing River breached this obligation to them when, as of January 1, 2014, it required the plaintiffs to pay the full monthly premium to maintain coverage under Singing River's Health Benefit Plan.[3]

---

[3] In their appeal brief, the plaintiffs make a one-sentence apparent-authority argument that "the memorandum and Benefit package conveyed apparent authority sufficient to induce [them] to retire early in reliance with reasonable expectation that the hospital had the

¶25. We find the plaintiffs' assertions without merit for the reasons addressed below. Based upon our review of the record and the applicable law, we find that summary judgment was properly granted in Singing River's favor because the special early retirement benefit package did not create a separate contract entitling the plaintiffs to continue health insurance benefits by paying an employee's share of the health insurance premium until they were eligible for Medicare. Rather, the special early retirement package furnished to eligible employees, read as a whole, reflects that it pertained to pension benefits, not health care benefits. As to health insurance benefits, the Information Guide simply advised the plaintiffs that they had the option to continue to remain covered under Singing River's Health Plan, just as any retiree could choose to do.

¶26. As the record reflects, the early retirement benefit was created by an amendment to Singing River's Employees' Retirement Plan and Trust Agreement that was duly approved and adopted by Singing River's Board of Trustees in 2005. This amendment is attached to the 2005 minutes adopting the special early retirement benefit resolution, and it contains a detailed explanation of the special early retirement benefit and how it will be implemented.

---

authority and intention to honor the agreement." The plaintiffs did not present this argument to the circuit court, and therefore we find that their apparent-authority argument is waived on appeal. *Kuiper v. Tarnabine*, 20 So. 3d 658, 661 (¶11) (Miss. 2009) (appellants were procedurally barred from raising issue that they failed to raise in the trial court).

The plaintiffs also assert in their appeal brief that even if there is no separate contract for continuation of benefits at the employee's rate, they detrimentally relied on this "promise" and thus Singing River should be equitably estopped from denying coverage at that rate. The plaintiffs did not present this argument before the circuit court, either, and like their apparent-authority argument, their equitable-estoppel argument is likewise waived on appeal. *Id.*

12

¶27. Particularly relevant in this case is that neither the minutes nor the amendment itself say anything at all about any additional health insurance benefit. "A community hospital board of trustees . . . speaks and acts only through its minutes." *Wellness Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1290 (¶9) (Miss. 2015); *Kennedy v. Claiborne Cty.*, 233 So. 3d 825, 829 (¶10) (Miss. Ct. App. 2017) ("[A public board's] minutes are the sole and exclusive evidence of what the board did and must be the repository and the evidence of their official acts." (internal quotation marks omitted)).

¶28. More to the point, the minutes rule prevents "consideration of evidence of the terms of the contract *other than what is set forth in the minutes*." *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne L.L.P.*, 853 F.3d 804, 812 (5th Cir. 2017) (discussing the "minutes rule" as addressed in *Wellness Inc.*, 178 So. 3d at 1290-93 (¶¶9-18)) (emphasis added). The Fifth Circuit explained this point, as follows:

> [T]he minutes rule is partially in the nature of a statute of frauds or a prohibition of reliance on parol evidence to establish the terms of a contract with a public entity . . . . [I]n some instances, the minutes rule is not a matter of contract formation but instead is a rule preventing consideration of evidence of the terms of the contract other than what is set forth in the minutes. When applied in this manner, the minutes rule seems to be one regarding validity or, more precisely, enforceability of contract terms not described in the minutes . . . . [O]nly the terms of the "contract" that are "contained in the minutes" are enforceable.

*Id.* at 811-13 (citations omitted). Accordingly, we find that under the minutes rule, the absence of any reference at all to health insurance benefits from the board's minutes means that the alleged additional health insurance benefits cannot be part of the alleged "contract" that any employee, including the plaintiffs, accepted by retiring early.

13

¶29. Further, as detailed above, the early retirement benefit package also included the Information Guide and an Election Statement. Language in both of these documents also shows that the early retirement benefit related to pension benefits, not health insurance benefits. The Information Guide provided to eligible employees explained that the benefit was based upon the recipient's "age and creditable years of service in the Retirement Plan"; it referred to the retirement benefit as being a source of income, not a guaranteed health insurance premium rate;[4] and the "Questions & Answers" section in the Information Guide describes the payments that a retiree would receive as "pension payments." The Election Statement that the plaintiffs were required to sign when they chose the early retirement benefit provided that the person signing the form was electing "special early retirement" and delineated how that "early retirement benefit" would be calculated based upon that person's credited service with Singing River.

¶30. In contrast, with respect to health insurance benefits, the Information Guide does no more than inform the package recipients that they had the option of continuing these benefits post-retirement under Singing River's Health Plan, just like any other retiree. As noted, the Continuation of Benefits section in the Information Guide described the opportunity to continue a number of benefits. Regarding health insurance, the Information Guide simply provided that "[r]etiring employees and their surviving spouses may continue coverage under the Health Plan, by paying the employee's share of the premium in advance until the retiree

---

[4] The Information Guide provided that the "Retirement Plan is a defined benefit plan that provides you a regular source of monthly income and a cost-of-living supplement annually."

14

becomes eligible for Medicare." We do not find that the language in this provision constitutes a separate contract allowing the plaintiffs to maintain health insurance coverage until they are Medicare-eligible on those terms. Instead, the plain language of the health insurance paragraph instructs an early retiree what he or she must do *in 2005* to continue coverage under Singing River's Health Plan. It does not contain any premium guarantee, and, in fact, the last sentence of this paragraph provides that "Health Plan premiums are subject to change annually."

¶31. As detailed above, Carter explained in his deposition that in 2005 *any* retiree having twenty or more years of service could continue health insurance coverage under the Health Plan by paying the employee's share of the premium—this was not a benefit offered only under the special early retirement package. In short, we find that these terms mean that if an early retiree chose to continue health insurance coverage, the retiree remained bound by the terms of Singing River's Health Plan, just like any other retiree who chose to remain covered under the Health Plan.

¶32. In this regard, with respect to coverage for retirees, Article II(E)(3)(d) of the Health Plan contains a detailed reservation-of-rights allowing Singing River to "amend, modify[,] or suspend the terms of the [Health] Plan at any time," as follows:

> An Eligible Person who is a Retiree must apply for coverage under the Plan no later than the next Open Enrollment Period immediately following the date of first becoming eligible as a Retiree. *The Group has reserved the right to amend, modify or suspend the terms of the Plan at any time and for any reason and to cancel or terminate the Plan and Benefits payable thereunder in whole or in part at any time and at its discretion. While the Group intends upon the adoption of this Plan to offer coverage to Eligible Retirees indefinitely, coverage for Eligible Retirees may have to be reduced or curtailed altogether*

15

*in the future for reasons which develop or arise unexpectedly*.

(Emphasis added).

¶33. We find that when the plaintiffs accepted early retirement, they did so being bound to the Health Plan language contained in the reservation-of-rights provision. Accordingly, when the Singing River Board of Trustees subsequently approved the revised guidelines to the Health Plan requiring retirees to pay the full premium for coverage in the future, as the Board of Trustees was authorized to do, the plaintiffs were bound by that Health Plan amendment. *See* Miss. Code Ann. § 41-13-35 (Rev. 2009) (giving a community hospital board of trustees broad authority over employee benefit plans and to "take all actions necessary to implement, administer[,] and operate such plans").

## II. The Circuit Court's Reconsideration of its Prior Grant of Partial Summary Judgment in the Plaintiffs' Favor

¶34. The plaintiffs assert that the circuit court abused its discretion by reconsidering its original grant of partial summary judgment in their favor and then granting summary judgment in Singing River's favor. The plaintiffs argue that the standard under Mississippi Rule of Civil Procedure 59(e) applies and that "to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004).

¶35. We find, however, that the Rule 59(e) standard does not apply in this case because Singing River sought reconsideration of the circuit court's *partial* summary judgment in the plaintiffs' favor. *See Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 415 (¶¶46-47)

16

(Miss. 2018). As Mississippi Rule of Civil Procedure 54(b) provides, "any order or other form of decision, . . . which adjudicates fewer than all of [a party's] claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *See also Wigington v. McCalop*, 191 So. 3d 124, 126 (¶3) (Miss. 2016).

¶36. In *Maness*, 250 So. 3d at 415 (¶47), the Mississippi Supreme Court determined that "consistent with" the Fifth Circuit's opinion in *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017), "the reconsideration of interlocutory orders proceeds pursuant to Rule 54(b)," not Rule 59(e). The Fifth Circuit explained this distinction as follows:

> Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," and it is "an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (alteration in original) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). In contrast, under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing Fed. R. Civ. P. 54(b)), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc); *see also Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015) (explaining that the higher standard in Rule 59(e) reflects the fact that judgment has already been entered, while the "more flexible" Rule 54(b) standard reflects the district court's inherent power to grant relief from interlocutory orders "as justice requires").

*Cabral*, 853 F.3d at 766 n.3.

¶37. Because the circuit court's partial summary judgment in the plaintiffs' favor was an interlocutory order, and not a final judgment, we find that the Rule 54(b) standard applies to Singing River's motion to reconsider in this case. Accordingly, the circuit court was "free

17

to reconsider and reverse its decision for any reason it deem[ed] sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* In this case, we find that summary judgment in Singing River's favor was warranted. We therefore find no error in the circuit court reconsidering and reversing its original partial summary judgment in the plaintiffs' favor. For the same reason, we find no merit in the plaintiffs' final assertion that the circuit court abused its discretion when it denied their motion to reconsider the grant of summary judgment in Singing River's favor and the dismissal of their lawsuit.

¶38.   **AFFIRMED.**

**J. WILSON, P.J., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS AND McDONALD, JJ. LAWRENCE, J., NOT PARTICIPATING.**

**McCARTY, J., DISSENTING:**

¶39.   Summary judgment should have never been granted in this case. There is very much a live question of fact as to whether the retirees have a remedy against the hospital for breaking its promise to pay the employer's share of their health care costs. This should not have been conclusively decided by a judge at a summary judgment stage, but instead resolved by a jury.

¶40.   The core issue in this case is only whether a genuine issue of material fact existed to halt a grant of summary judgment for Singing River. The retirees contended they had valid and enforceable contracts with Singing River to continue providing health insurance to them

18

at the same rate as the hospital's employees until they became Medicare-eligible. The retirees further asserted that they were damaged when Singing River breached these contracts by requiring them to pay the full monthly premium, which was a substantially higher rate than that paid by employees.

¶41. "The existence of a contract and its terms are questions of fact to be resolved by the fact-finder, whether a jury or a judge in a bench-trial." *Anderson v. Kimbrough*, 741 So. 2d 1041, 1045 (¶12) (Miss. Ct. App. 1999). "[T]he test for determining whether a writing constitutes an enforceable contract is whether the parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be legally enforced." *Jackson HMA LLC v. Morales*, 130 So. 3d 493, 498 (¶15) (Miss. 2013).

¶42. During oral argument, the retirees emphasized that the point was not the *amount* of the premium they were obligated to pay to maintain their health insurance. Instead, the crux of their argument was about the *share* of the premium they were required to pay. The uncontested proof showed that requiring the retirees to pay the full monthly premium resulted in massive cost increases to them every month. For instance, four of the retirees stated that paying the full premium required each of them to pay an additional $713 per month. After the hospital's decision, the retirees' payments increased from $130 per month to $843 per month—a staggering *548% increase*.

¶43. And while Singing River reserved the right to alter the terms of the health plan under Article II(E)(3)(d), the plan did not stop there. The plan explained that while any participant who retired with twenty or more years of service was entitled to continue coverage.

19

[p]articipants and their surviving spouses, may continue coverage under this Plan, *by paying the employee's share of the monthly premium in advance, until they become eligible for Medicare. Once they become eligible for Medicare, they may continue coverage if they pay the full premium.*

(Emphasis added). The health-insurance section of the information guide similarly states that retirees could continue coverage under the plan by paying the employee's share of the premium until they became Medicare-eligible.

¶44.    In his Mississippi Rule of Civil Procedure 30(b)(6) deposition, Summerlin emphasized that the retirees were offered a benefit in exchange for accepting the early retirement package. Summerlin even admitted that nothing in the package of retirement material revealed that the retirees would ever have to pay the entire premium. Carter testified similarly in his deposition. He agreed that the retirees were told they would only have to pay the employee's share of the premium until Medicare-eligible.

¶45.    Under the correct standard of review, we do not require the retirees to prove they would prevail at trial. Instead, at this stage, whether the retirees relied upon Singing River's promise is simply a genuine issue of material fact. Each retiree stated that continued health insurance was why they accepted the early retirement offer and that they all relied upon the promise of paying the employee share until Medicare-eligible. "A fact is material if it tends to resolve any of the issues properly raised by the parties." *Thomas v. Bradley*, 987 So. 2d 1000, 1024 (¶12) (Miss. 2008) (internal quotation marks omitted).

¶46.    We should steadfastly apply the rule "that the non-moving party is entitled to the benefit of all reasonable favorable inferences that may be drawn from the record." *Burkhalter & Co. v. Wissner*, 602 So. 2d 835, 838 (Miss. 1992). Seen through that lens, this

20

case does not become sharper, but murkier—which is *exactly* why it is suited for a jury to determine and not a judge on summary judgment. We should not step in when the facts are this fraught, or this close, but rely upon our constitutional fact-finder.

¶47. Nothing emphasizes this point more than the whiplash rulings from the trial court—which one day ruled completely that the retirees had prevailed, and another day that the hospital did. It is just too close to call—so no judge alone, nor ten judges in concert, should try.

**BARNES, C.J., WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**